FILED
CLERK, U.S. DISTRICT COURT

AUG 1 5 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

1  ROBERT R. ROGINSON, CA Bar No. 185286
   robert.roginson@ogletreedeakins.com
2  JOHNNIE A. JAMES, CA Bar No. 144091
   johnnie.james@ogletreedeakins.com
3  BENJAMIN IKUTA, CA Bar No. 260878
   benjamin.ikuta@ogletreedeakins.com
4  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
5  400 South Hope Street, Suite 1200
   Los Angeles, CA 90071
6  Telephone: 213.239.9800
   Facsimile: 213.239.9045
7
   Attorneys for Plaintiffs Total
8  Transportation Services, Inc., Overseas
   Freight Inc., Pac 9 Transportation, Inc.,
9  and Southern Counties Express, Inc.

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  TOTAL TRANSPORTATON              Case No. CV12-08949 MMM (AJWx)
    SERVICES, INC. a California
14  corporation; OVERSEAS FREIGHT,   **FIRST AMENDED COMPLAINT FOR**
    INC. a California corporation; PACIFIC  **DECLARATORY AND INJUNCTIVE**
15  9 TRANSPORTATION, INC. a         **RELIEF**
    California corporation; and
16  SOUTHERN COUNTIES EXPRESS,       Original Complaint Filed: October 17, 2012
    INC., a California corporation,   Trial Date:        January 7, 2014
17                                    District Judge:    Hon. Margaret M. Morrow
                   Plaintiffs,        Magistrate Judge:Hon. Andrew J. Wistrich
18
            v.
19
    JULIE SU, LABOR COMMISSIONER
20  OF THE STATE OF CALIFORNIA,
    DEPARTMENT OF INDUSTRIAL
21  RELATIONS, in her official capacity.
22          Defendant.
23

24

25

26

27

28

NOW COME PLAINTIFFS FOR THEIR COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF HEREIN ALLEGE AS FOLLOWS:

### JURISDICTION AND VENUE

1.      Jurisdiction is conferred on this Court by virtue of 28 U.S.C. §§ 1331 and 1337, based on the federal question of whether the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. §14501 ("FAAAA") preempts the application of California's wage and hour laws and other employee-related statutes to licensed logistical motor carrier companies that provide drayage services for the transportation of property in interstate commerce.  Defendant Julie Su, Labor Commissioner of the State of California Department of Industrial Relations, ("Defendant") has applied, and continues to apply, the multi-factor test articulated in *S. G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d. 341 (1989) (the "*Borello* Test") resulting in the factual finding of the existence of an employer-employee relationship and the issuance of an Order, Decision or Award ("ODA") under California's applicable wage orders and relevant California Labor Code sections.

2.      Plaintiffs seek a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*. that Plaintiffs are exempt from complying with the State's wage and hour laws and other employee-related statutes resulting from Defendant's application of the *Borello* test because such laws as applied to Plaintiffs' logistical motor carrier services adversely affect the prices, routes, and drayage services of Plaintiffs' transportation of property in interstate commerce.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the drayage services provided by Plaintiffs and that are subject to FAAAA preemption were entered into and carried out within the geographical boundaries of the United States District Court for the Central District of California, and a substantial amount of the alleged events occurred in this judicial district.

4. **The Plaintiffs.** Plaintiff Total Transportation Services, Inc. is a California corporation having its principal place of business in the State of California ("TTSI"); Plaintiff Overseas Freight, Inc. is a California corporation having its principal place of business in the State of California ("Overseas Freight"); Plaintiff Pacific 9 Transportation, Inc. is a California corporation having its principal place of business in the State of California ("Pac 9"); and Plaintiff Southern Counties Express, Inc. is a California corporation having its principal place of business in the State of California ("Southern Counties") (collectively, the "Plaintiffs").  The Plaintiffs are licensed logistical motor carrier companies that manage, coordinate and schedule the movement of property from port locations through duly authorized and valid motor contract carrier permits issued by the Federal Motor Carrier Safety Administration, a division of the U.S. Department of Transportation (the "Motor Carrier Services").  The Motor Carrier Services are carried out by the Plaintiffs by leasing truck tractors, including clean trucks, and trailers to independent contractors who deliver goods to and from the Ports of Los Angeles and Long Beach, California, pursuant to operating authorities issued and regulated by the U.S. Department of Transportation (the "DOT").  Among other things, the DOT regulates the motor carriers' hours of service, the lease requirements when the truck used is not owner-operated by the motor carrier, and insurance requirements in order to perform the Motor Carrier Services.  The customers serviced by the Plaintiffs and independent contractors include, but not limited to, The Home Depot, Target, Honeywell, and Konica Minolta Business Solutions, to name a few.

5. **The Labor Commissioner.**  Defendant Julie Su is the Labor Commissioner of the California Department of Industrial Relations, which is a member department of the California Labor and Workforce Development Agency. The Office of the Labor Commissioner (also known as the State "Division of Labor Standards Enforcement," or "DLSE") was established, among other things, to adjudicate wage claims under the California Labor Code.

## FACTS

6.     The Plaintiffs have contractual relationships with independent contractors that are memorialized in individual and secular forms of Vehicle Lease Agreements, Freight Hauling Agreements, and other similar agreements, confirming the independent contractors' status as "independent contractors" who are responsible for their own taxes, insurance, licenses, employees, and other requirements necessary to transport freight by truck in California under lease with any one of the Plaintiffs. Pursuant to these Agreements, the independent contractors are also responsible for their own business expenses, including maintenance, repair, parking and fuel expenses, and are compensated for freight hauling in accordance with negotiated rates and not by the payment of wages.  These independent contractors regularly enter into independent contractor agreements providing for the performance of transportation services for the Plaintiffs on a non-exclusive basis, and are not treated by the Plaintiffs as employees for any purpose, including payroll tax withholding, and accordingly, are not subject to California's labor and employment laws.

### The Ports' Operations and the Plaintiffs' Motor Carrier Services

7.     The Los Angeles and Long Beach Ports are open from 8:00 a.m. to 4:00 p.m. and again from 6:00 p.m. to 3:00 a.m.  Plaintiffs and other licensed logistical motor carrier companies are notified by their respective customers approximately 2 to 4 weeks in advance of when a cargo ship has departed a particular country heading to either the Los Angeles or Long Beach Port containing goods and property for pickup and delivery to that customer.  The notification also includes the number of containers the customer is expecting to arrive on that particular cargo ship, which impacts the size and number of deliveries to that customer. Along with that notification are delivery schedule dates on which the customer is expecting its product to be delivered to its distribution center.  The expected arrival schedule of those containers is further revised weekly and sometimes daily, based upon a variety of conditions, including, but not limited to, weather and labor conditions at the

1   terminals. Once the containers arrive by cargo ship, they are placed by the Port's

2   longshoremen in various places in the terminal yard and efforts are then made to

3   ready the containers for pickup, which include, but not limited to, clearing customs

4   and identification of the containers.  Consequently, the Plaintiffs' ability to timely

5   meet their respective customer's delivery schedules is dependent upon (1) the

6   weather conditions in route to the destination port; (2) availability of gates/terminals

7   at the destination port (while ports publish a monthly schedule of times the gates are

8   opened, the actual times vary from day to day and week to week depending upon

9   union related Stop Work Meetings, strikes/work stoppage, and vacation schedules of

10  the longshoremen who remove the cargo from the cargo ships); (3) the time it takes

11  for the independent contractor to get in and out of the ports (the average duration to

12  get in and out of the Port is between 2 and 3 hours per trip); and (4) Holidays

13  observed by the Ports, of which there are fifteen.  The Port's schedules are also

14  affected by the U.S. sequester budget cuts, resulting in gates closing earlier than

15  scheduled. Finally, for safety reasons, the DOT's hours of service requirements limit

16  drivers to a set number of hours in a truck per day, and limits the number of

17  continuous driving days per week.  The DOT is implementing rules to start tracking

18  such times by requiring motor carriers to install and use in each truck an electronic

19  logging device called an Electronic Onboard Recorder.  This rule is scheduled to go

20  into effect in the Fall/Winter of 2013.

21      8.      To provide the level of service required by its customers, driven largely

22  by the timely meeting of delivery schedules within the confines of the DOT

23  regulations, licensed logistical motor carrier companies such as the Plaintiffs must

24  have maximum flexibility in managing, coordinating and scheduling the pickup and

25  delivery of goods and products in the stream of intrastate and interstate commerce.

26  This flexibility is achieved through the use of independent contractors.

27      9.      The independent contractors determine the days and hours they will

28  work and which pickups they will accept, the routes used to pick up and deliver the

goods and products from the Ports, and other hauling decisions in getting the trucks in and out of the Ports safely, quickly and efficiently.  The independent contractors are paid per leg (or piece meal) of a round-trip.  A round-trip includes getting into the Port, picking up the containers of goods and products for a particular customer, exiting the Port, getting the goods and products to that customer, and returning the containers used to ship and carry the good and services back to the Port for drop-off. The more legs completed by the independent contractor, the more the independent contractor will earn under its agreement with the motor carriers.  Consequently, it is the independent contractor who determines how much the contractor wants to make for a day of drayage work within the limits imposed by the DOT.

### The Clean Truck Program

10.     Beginning in 2008, the Board of Harbor Commissioners of the City of Los Angeles and the Port of Long Beach adopted a "Clean Trucks Program" which was designed to replace pollution-causing trucks with newer ones that would emit fewer particulates.  The Clean Truck Program was made part of a Concession Agreement whereby "clean trucks" were required to be used by motor carriers hauling freight to and from the Ports by 2012 and was aimed at reducing air pollution.  In devising the Clean Truck Program, the Ports recognized that the vast majority of port drayage was hauled by independent contractors under lease agreements with licensed logistical motor carriers such as the Plaintiffs, and implemented an incentive program providing operators with the opportunity to obtain access to and possible ownership of newer, lower-emission "clean trucks" through a Truck Funding Program.  Also in 2008, the Ports began informing and educating licensed motor carriers and independent contractors regarding the requirements for the Clean Truck Programs including the availability of grants and other subsidies for truck owners to upgrade or replace their existing vehicles to meet the Clean Truck Program mandates.  The grant and subsidy programs offered as much as 80% for qualifying vehicle owners who participated in the leasing and grant

1  program.  Under the Port's own lease-to-own programs, an applicant was entitled to

2  exchange an old truck for a pre-approved new truck under a seven-year lease

3  agreement that was subsidized up to 80% by the Port. At the conclusion of the lease

4  terms, an applicant was also entitled to a subsidy towards the purchase of the truck

5  for the lease.  Plaintiffs are informed and believe, and on the basis of such

6  information and belief allege, that despite these incentives offered by the Ports, most

7  independent contractors were unable or unwilling to use the Ports' leasing programs.

8  Plaintiffs allege on information and belief that access and use of the Ports' leasing

9  programs by independent contractors was affected by, among other things, the filing

10  of a lawsuit in the Central District of California for the United Stated District Court

11  by the American Trucking Association ("ATA") against the Port of Long Angeles in

12  July 2008, entitled *American Trucking Association v. Port of Los Angeles*, Case No.

13  CV 08-4920 CAS (RZx).  In that lawsuit, the ATA alleged that certain provisions of

14  the Los Angeles Concession Agreement were preempted by federal law.  Specific to

15  this matter, ATA challenged the provision of the Concession Agreement which

16  required licensed motor carriers to transition from using independent contractors as

17  drivers to employee drivers.  As a result of this litigation, the Port of Los Angeles

18  refrained during the three-year pendency of this litigation from implementing this so-

19  called "employee-driver" provision.  Whether the employee-driver requirement

20  would ever be implemented was finally resolved in the Fall of 2011, when the Ninth

21  Circuit Court of Appeals issued its decision finding that the employee-driver

22  provision was preempted by the FAAAA. (*See, American Trucking Associations,*

23  *Inc. v. City of Los Angeles*, 660 F.3d 384, 408 (9th Cir. 2011).) The Port of Los

24  Angeles issued a Notice stating that it would not enforce the employee-driver

25  provision.

26       11.    Because many independent contractors could no longer provide services

27  to the Plaintiffs due to their inability or unwillingness to purchase trucks that

28  qualified under the Clean Truck Program, or otherwise use the Ports' leasing

1  program, Plaintiffs arranged for the purchase and availability for lease and/or

2  purchase of a number of trucks that complied with the new requirements and

3  subsequently made them available to independent contractors for lease and/or

4  purchase pursuant to lawful commercial terms and conditions.

5  <u>**DLSE Investigation, Hearings and Findings**</u>

6       12.    In or around 2010, Defendant commenced investigations of licensed

7  logistical motor carrier companies to determine whether or not the independent

8  contractors with whom each company contracts should be reclassified and treated as

9  employees under California law.  Those investigations against some of the Plaintiffs

10  were ultimately abandoned, and the Defendant began to process and adjudicate

11  individual claims brought against these companies by independent contractors

12  claiming for the first time that they were misclassified.

13       13.    In or around the last quarter of 2011 and the first quarter of 2012, two

14  independent contractors with existing independent contractor agreements with

15  Plaintiff TTSI filed claims with Defendant seeking an adjudication and

16  determination of the existence of an employer-employee relationship and seeking

17  amounts for alleged unlawful deductions, interests and waiting time penalties under

18  various provisions of the California Labor Code.  Defendant held hearings on the

19  aforementioned claims and found the existence of an employer-employee

20  relationship with each claimant, stating *"the overriding factor in determining*

21  *whether the [claimant] was an employee rather than an independent contractor*

22  *relied on the factor that the [claimant] who performed the work was not engaged in*

23  *an occupation of business distinct from that of the Defendant [TTSI herein]. Rather,*

24  *his work was the basis for the Defendant's work."* (Emphasis added.)  Defendant

25  ordered Plaintiff TTSI to pay each claimant within ten (10) days an award that

26  collectively totaled approximately $179,322.70.  Attached hereto as Exhibit "A" and

27  incorporated herein by reference are true and correct copies of the ODAs of the

28  Defendant Labor Commissioner.  Within 10 days of the Defendant's ODAs and

Case No. CV12-08949 MMM (AJWx)

FIRST AMENDED COMPLAINT

15699205_1.docx

1    pursuant to California Labor Code Section 98.2, Plaintiff TTSI posted bonds and

2    appealed to the Superior Court for the County of Los Angeles.

3        14.    On or around the last quarter of 2011 and during the first quarter of

4    2012, independent contractors under independent contractor agreements with

5    Plaintiffs Overseas Freight, Pac 9, and Southern Counties filed claims with

6    Defendant seeking an adjudication and determination of the existence of an

7    employer-employee relationship and seeking amounts for alleged unlawful

8    deductions, interests and waiting time penalties under various provisions of the

9    California Labor Code. Upon those claims being set for hearing by Defendant,

10   Plaintiffs Overseas Freight, Pac 9, and Southern Counties filed petitions to compel

11   arbitration under the terms of the independent contractor agreements. Attached

12   hereto and incorporated herein as Exhibit "B" are true and correct copies of the

13   petitions to compel.

14       15.  Plaintiffs are informed and believe, and on the basis of such information

15   and belief allege that Defendant has filed papers with the Superior Court stating that

16   the claims filed against Plaintiffs Overseas Freight, Pac 9, and/or Southern Counties

17   are not appropriate for arbitration and must proceed to a hearing before one of its

18   hearing officers.

19       16.    The Defendant's ODAs against Plaintiff TTSI finding the existence of

20   employee-employer relationships, and the scheduled hearings for claims filed against

21   Plaintiffs Overseas Freight, Pac 9 and Southern Counties, which on information and

22   belief will result in similar findings should those hearings go forward, have the effect

23   of completely destroying  the Plaintiffs' flexibility in managing, coordinating and

24   scheduling the pickup and delivery of goods and products in the stream of intrastate

25   and interstate commerce.

26       **The Borello Test and its Impact on Plaintiffs' Motor Carrier Services**

27       17.    Defendant has applied and continues to apply the *Borello* Test.

28   Defendant's application of the *Borello* Test essentially ensures a finding by

Defendant of an employer-employee relationship when applied to Plaintiffs' Motor Carrier Services and the necessity of allowing the independent contractors to lease trucks in order to comply with the Concession Agreement under the Clean Truck Program[1] if those independent contractors want to continue doing Port drayage work.

18.     Defendant's application of the *Borello* Test is inconsistent with the application of the Economic Realities Test under the Fair Labor & Standards Act ("FLSA"). The FLSA's Economic Realities Test does not give particular weight to any one factor but considers all of the factors equally within the context of the total activity or situation. *See Fichman v. Media Center*, 512 F.3d 1157 (9th Cir. 2008).

19.     Plaintiffs are informed and believe and on the basis of such information and belief allege that the application by Defendant of the *Borello* Test has resulted in and will continue to result in the finding of employee-employer relationships in the context of Plaintiffs' Motor Carrier Services that consequently directly affect prices, routes and services in the transportation of property in interstate commerce as more fully alleged below. Plaintiffs are also subject to the Economic Realities Test under the provisions of the FLSA for purposes of determining employment status. Requiring the Plaintiffs to operate under two different standards in California is antithetical to federal regulations that attempt to prevent states from increasing burdens on and interfering with interstate motor vehicle transportation.

20.     Plaintiffs are informed and believe, and on the basis of such information and belief allege that requiring Plaintiffs to convert to an employee model to conduct

---

[1] In *American Trucking Associations, Inc. v. City of Los Angeles*, 2010 WL 3386436 (C.D.Cal.), District Court Judge Christina A. Snyder found that the FAAAA preempted the employee-driver provision contained in the Concession Agreement (*i.e., prohibiting trucks driven by independent owner-operators from providing drayage services*) because it affected the motor carriers' prices, routes, and services unless saved by any applicable exception. She concluded that the employee-driver provision was saved by the market-participant exception. The Ninth Circuit reversed, holding that "the employee-driver provision is "tantamount to regulation and thus does not fall under the market-participant exception." *American Trucking Associations, Inc. v. City of Los Angeles*, 660 F.3d 384, 408 (9th Cir. 2011). Thereafter, the Port of Los Angeles did not challenge the Court's ruling on the employee-driver provision.

15699205_1.docx

1    the Motor Carrier Services would directly and immediately adversely affect prices,

2    routes and services currently being provided to its customers who operate in

3    intrastate and interstate commerce.  The employee model would increase the rates

4    charged to customers in excess of fifty percent because of: (1) the hourly rate per

5    employee, plus costs for benefits (medical, dental and pension plans) and other

6    employee related statutes (e.g., family and medical leave), workers' compensation

7    insurance, and allowance for overtime; (2) the need to increase the number of

8    employees to off-set the decrease in productivity and efficiency of the workers which

9    will drop by 50%; and (3) the need to purchase additional trucks for the new

10   additional employees hired to offset the drop in productivity.  However, Plaintiffs'

11   current margins are insufficient to cover the additional costs if absorbed by the

12   Plaintiffs.

13       21.    The employee model would result in reduced services, affect routes and

14   jeopardize the timely delivery of goods and products to the customers. Being

15   required to provide up to (2) two 30-minute uninterrupted meal breaks and three (10)

16   ten minute rest breaks would necessarily require drivers who might otherwise be in

17   line to enter the Port to pull over, if not exit the Port altogether due to the Ports'

18   parking restrictions, and alter routes to find a safe place to park in order to take such

19   mandated meal and rest breaks.  California laws restrict drivers from parking

20   wherever they want; for example, Vehicle Code Section 22500(h) prohibits double

21   parking, and Vehicle Code Section 22500(e) prohibits the blocking of driveways.

22   Additionally, some local ordinances restrict access to certain roads, areas and

23   communities by trucks over a certain weight and length. Consequently, what would

24   have been 2-3 hours on average to enter and exit the Ports now becomes potentially

25   up to 4-6 hours, as the driver has to start all over again at the back of the line to enter

26   the Port having had to deviate from the intended route and reenter or exit the Port to

27   comply with the mandated meal and rest breaks and the various local ordinances

28   regulating where and when such trucks can pull over and park.  If the employee-

Case No. CV12-08949 MMM (AJWx)

15699205_1.docx

1   driver misses the window when the gates are opened because he or she is on a

2   mandated meal or rest break and either (1) there is an unforeseen work stoppage, (2)

3   reentering the line to gain access causes additional delays, or (3) there is an early

4   closing of a particular gate,  the timely delivery of the goods and products for that

5   particular customer for that particular day is thwarted.  The additional costs in fuel

6   consumption, additional miles driven and vehicle wear and tear are either absorbed

7   by the licensed logistical motor carriers or passed to their respective customers in the

8   form of higher rates for services.

9          22.    Plaintiffs, and each one of them, conduct Motor Carrier Services outside

10  of California using the independent contractor model. Defendant's attempt to force

11  the Plaintiffs to an employee model in California, while they continue to use

12  independent contractors outside of California will adversely affect the Plaintiffs'

13  overall business model resulting in the added costs being distributed to their

14  respective operations outside of California thereby impacting the prices, routes and

15  services performed in those states for those customers.

16         23.    Plaintiffs are informed and believe, and on the basis of such information

17  and belief allege that approximately 40% of the Nation's cargo comes into California

18  Ports.

19         24.    Plaintiffs are informed and believe, and on the basis of such information

20  and belief allege that should they, and each of them, attempt to pass along the added

21  costs of the employee model to their respective customers, reduce the current level of

22  service by reducing the number of round-trips, and/or fail to timely pickup and

23  delivery goods and products when scheduled, the customers would find other means

24  of service such as direct rail through Canada thereby impacting jobs in California

25  and beyond, or pass the added costs on to the consumer who ultimately buys its

26  goods and products.

27         **The FAAAA**

28         25.    The FAAAA preempts laws that affect prices, routes, or services in the

1 transportation of property.  Section 14501(c) "Motor Carriers of Property" provides:

2       "(1)    General rule.--Except as provided in paragraphs (2) and (3), a State,

3 political subdivision of a State, or political authority of 2 or more States may not

4 enact or enforce a law, regulation, or other provision having the force and effect of

5 law related to a price, route, or service of any motor carrier . . . or any motor private

6 carrier, broker, or freight forwarder with respect to the transportation of property.

7       (2)    Matters not covered.--Paragraph (1)--

8       (A)    shall not restrict the safety regulatory authority of a State with respect to

9 motor vehicles . . ."

10 49 U.S.C § 14501.

11       26.    Plaintiffs are informed and believe, and on the basis of such information

12 and belief allege that Congress enacted the FAAAA (1) to extend to "motor private

13 carriers" the "identical intrastate preemption of prices, routes and services as that

14 originally contained in the Airline Deregulation Act [of 1978, 49 U.S.C. Section

15 41713(b) (the "ADA")]"; and (2) to prevent the states from increasing burdens on

16 and interfering with interstate motor vehicle transportation. Regulations that have a

17 significant effect on a motor carrier's prices, routes, or services are preempted.

18       27.    Plaintiffs are informed and believe, and on the basis of such information

19 and belief allege that the  Defendant's application of the *Borello* Test to claims filed

20 against Plaintiffs has resulted in and will continue to result in Defendant finding the

21 existence of employee-employer relationships subjecting Plaintiffs to the full

22 measure of California's wage and hour and employee-related laws applicable to

23 employees performing work within the State.  These laws as applied to the Plaintiffs'

24 Motor Carrier Services adversely affect prices, routes and services in the

25 transportation of property in interstate commerce.

26       28.    Plaintiffs are informed and believe, and on the basis of such information

27 and belief allege that Defendant disputes that the application of the full measure of

28 California's wage and hour and employee related laws adversely affect prices, routes

1    and services in the transportation of property in interstate commerce.

2    **FIRST CLAIM FOR DECLARATORY RELIEF**

3       29.    Plaintiffs incorporate herein by reference each and every allegation

4    contained in the foregoing paragraphs, inclusive, as if fully set forth below.

5       30.    A case or controversy has arisen by virtue of Plaintiff TTSI suffering an

6    injury-in-fact directly related to Defendant's application of the *Borello* Test,

7    resulting in ODAs and the finding of the existence of an employee-employer

8    relationship with respect to each of the claims filed against Plaintiff TTSI. Plaintiff

9    TTSI's injuries are actual, particularized and concrete, in that but-for Plaintiff

10    posting a bond and appealing the Orders to the Los Angeles Superior Court,

11    Defendant's ODAs would have become final and enforceable judgments in a court of

12    law. In short, had the ODAs become final enforceable judgments, Plaintiff TTSI

13    would have been forced to either close down shop or convert each of its independent

14    contractors to employees (assuming they would be willing to give up their business

15    and become employees), either of which has the practical effect of adversely

16    affecting Plaintiff's prices, routes and services in the transportation of property in

17    intrastate and interstate commerce. Plaintiff TTSI has exhausted all administrative

18    avenues and processes available to it to redress the injuries alleged herein. Plaintiff

19    TTSI believes and thereon alleges that a declaration from this Court is required that

20    FAAAA preempts, and by virtue of preemption, exempts Plaintiff TTSI from

21    complying with California's wage and hour and employee-related laws with respect

22    to their Motor Carrier Services as those laws apply to employees performing services

23    within the State of California. A declaration by this Court for the relief requested

24    would redress the injuries alleged herein. Failing to provide the specific relief

25    requested would result in continued harm and injury to Plaintiff TTIS by imposing

26    upon it a business model that will effectively put it out of business within the State of

27    California.

28       31.    A case or controversy has arisen by virtue of an imminent injury facing

1   Plaintiffs Overseas Freight, Pac 9 and Southern Counties by virtue of Defendant

2   setting for hearings the claims filed against Plaintiffs Overseas Freight, Pac 9 and

3   Southern Counties, seeking an adjudication and findings of the existence of

4   employee-employer relationships. Based on the findings from the hearings

5   conducted by Defendant with respect to the claims filed against Plaintiff TTSI where

6   the facts adjudicated by Defendant were identical in every respect to the claims

7   currently set for hearings, Plaintiffs Overseas Freight, Pac 9 and Southern Counties

8   are informed and believe and on the basis of such information and belief allege that

9   the outcome of those hearings will be no different than the hearings held and

10   adjudicated against Plaintiff TTSI, resulting in findings of employee-employer

11   relationships and fines, penalties and back wages in excess of $179,000. The

12   imminent injury that Plaintiffs Overseas Freight, Pac 9 and Southern Counties will

13   suffer is directly related to Defendant's application of the *Borello* Test.  Plaintiffs

14   Overseas Freight, Pac 9 and Southern Counties' imminent and anticipated injuries

15   are actual, particularized and concrete, in that but-for the filing of petitions to compel

16   arbitration, the hearings dates set by Defendant would have proceeded. Plaintiffs

17   Overseas Freight, Pac 9 and Southern Counties are informed and believe and on the

18   basis of such information and belief allege that Defendant has argued, and continues

19   to argue, that arbitration is inappropriate for the claims asserted and the hearings as

20   scheduled should proceed.  Should the hearings be conducted and findings of

21   employee-employer relationships be found as expected and anticipated based on

22   prior findings on identical facts, and should those ODAs become final and

23   enforceable judgments in a court of law, Plaintiffs Overseas Freight, Pac 9, and

24   Southern Counties will be forced to either close down shop or convert each of its

25   independent contractors to employees, either of which has the practical effect of

26   adversely affecting their prices, routes and services in the transportation of property

27   in intrastate and interstate commerce.  Plaintiffs Overseas Freight, Pac 9, and

28   Southern Counties believe and therefore alleged that a declaration from this Court is

14

1  required that FAAAA preempts, and by virtue of preemption, exempts them from

2  complying with California's wage and hour and employee-related laws with respect

3  to their Motor Carrier Services as those laws apply to employees performing services

4  within the state of California. A declaration by this Court for the relief requested

5  would redress the injuries alleged herein.  Failing to provide the specific relief

6  requested would result in continued harm and injury to Plaintiffs Overseas Freight,

7  Pac 9 and Southern Counties by imposing upon them a business model that will

8  effectively put them out of business within the State of California.

9       32.    A declaration of the parties' rights and interests is necessary and

10  required in order to resolve this dispute and to determine whether the FAAAA

11  preempts California's wage and hour and employee-related laws as such laws are

12  applied to Plaintiffs' Motor Carrier Services.  A declaratory judgment is both

13  necessary and proper under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.,

14  to determine the rights, obligations and liabilities that exist among and between the

15  parties.

16                **SECOND CLAIM FOR INJUNCTIVE RELIEF**

17       33.    Plaintiffs incorporate herein by reference each and every allegation

18  contained in the foregoing paragraphs, inclusive, as if fully set forth herein.

19       34.    The Defendant's continued application of the *Borello* Test resulting in

20  findings of employee-employer relationships and the on-going attempt to enforce

21  existing ODAs will continue to cause Plaintiffs irreparable harm so as to warrant a

22  temporary restraining order, preliminary injunction, and permanent injunction.

23  Ordinary remedies available at law, such as monetary damages, are inadequate to

24  compensate for the injuries alleged.  Plaintiffs request that the Court issue an order

25  (1) prohibiting the Defendant from applying the *Borello* Test, which fails to give

26  appropriate and proper weight to all of the factors set out in *Borello* in determining

27  the existence of an employee-employer relationship, and (2) prohibiting the

28  enforcement by Defendant of the existing ODAs currently on appeal in Los Angeles

Case No. CV12-08949 MMM (AJWx)

15699205_1.docx

Superior Court. Such an Order will maintain the status quo and permit this case to move forward to a final declaratory judgment with respect to the issue of whether California's wage and hour and employee-related laws as applied to Plaintiffs' Motor Carrier Services are preempted by FAAAA in that such laws adversely affect prices, routes and services in the transportation of property in interstate commerce.

35.     There is a strong likelihood that Plaintiffs will prevail on the merits, in that California's wage and hour and employee-related laws when applied to Plaintiffs' Motor Carrier Services adversely affects the Plaintiffs' prices, routes and services in the transportation of property in interstate commerce and therefore should be preempted by FAAAA.

36.     Plaintiffs will suffer irreparable injury if injunctive relief is not granted because they will either have to (1) continue to post bonds and appeal ODAs in state court and/or file petitions to compel arbitration of individual claims, all at great financial expense to Plaintiffs and each of them, with the possibility that the state court could uphold the Defendant's ODAs and the Defendant subsequently seek to enforce those judgments; or (2) cease all Motor Carrier Services using independent contractors until such time as a determination of the parties' rights, interests and obligations are made by this Court, thereby jeopardizing the relationships Plaintiffs have with their respective customers and effectively closing down shop and terminating the routes and services in the transportation of property—the very issue they seek to avoid by seeking the relief requested herein.

37.     Should Defendant be enjoined until such time as this Court can declare the parties' rights, interests and obligations, it merely will have to wait until the outcome of this action to resume its practices. The balance of hardships tip sharply in the favor of the Plaintiffs who in the absence of injunctive relief, will spend inordinate sums of money defending themselves on parallel tracks or be forced to cease all operations and terminate their respective routes and services in the transportation of property in interstate commerce.

Case No. CV12-08949 MMM (AJWx)

15699205_1.docx

38.     The public's interests will be advanced by precluding the application of the *Borello* Test resulting in the finding of employee-employer relationships which are or should be preempted by FAAAA.  The public's interests will further be advanced by precluding the enforcement of ODAs; failing to do so will likely result in the Plaintiffs going out of business within the State of California, thereby terminating routes and services in the transportation of property in interstate commerce.

**WHEREFORE**, Plaintiffs demand judgment against Defendant as follows:

On Plaintiffs' First Claim for Declaratory Relief

1.     The Court determine and declare that the State's full measure of wage and hour and employee-related laws as applied to Plaintiffs' Motor Carrier Services are preempted by FAAAA because such laws when applied to Plaintiffs' Motor Carrier Services adversely affect prices, routes and services in the transportation of property in interstate commerce;

2.     For their respective attorneys' fees and costs of suit herein; and

3.     For such other and further relief as the Court deems just and proper.

On its Second Claim and Injunctive Relief

1.     Issue a Temporary Restraining Order prohibiting the Defendant from (1) applying the *Borello* Test, and (2) enforcing the existing ODAs currently on appeal in Los Angeles Superior Court;

2.     Grant a Preliminary Injunction, and thereafter a Permanent Injunction, pursuant to Federal Rule of Civil Procedure 65, prohibiting Defendant from (1) applying the *Borello* Test, and (2) enforcing the existing ODAs currently on appeal in Los Angeles Superior Court;

///

///

15699205_1.docx

1      3.    For Plaintiffs' attorneys' fees and costs of suit herein; and

2      4.    For such other and further relief as the Court deems just and proper.

3

4   DATED: August 15, 2013       OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

5

6

7                               By:

8                                  Robert R. Roginson
Johnnie A. James
Benjamin Ikuta

9

10                           Attorneys for Plaintiffs Total Transportation Services, Inc., Overseas Freight Inc., Pac 9 Transportation, Inc., and Southern Counties Express, Inc.

Case No. CV12-08949 MMM (AJWx)

15699205_1.docx

| LABOR COMMISSIONER, STATE OF CALIFORNIA<br>Department of Industrial Relations<br>Division of Labor Standards Enforcement<br>300 Oceangate, Suite 302<br>Long Beach, CA 90802<br>Tel: (562) 590-5048  Fax: (562) 499-6467 | For Court Use Only: |
|---|---|
| Plaintiff:  Cristobal Cardona Barrera | |
| Defendant:  TOTAL TRANSPORTATION SERVICES, INC. | Court Number |

| State Case Number<br>05 - 55410 LT | ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER |
|---|---|

1. The above-entitled matter came on for hearing before the Labor Commissioner of the State of California as follows:

 DATE: December 3, 2012   ☒ CONTINUED TO:

 CITY: 300 Oceangate, Suite 302, Long Beach, CA 90802

2. IT IS ORDERED THAT:  **Plaintiff recover from Defendant.**

| $ | 54,940.00 | for wages  (with lawful deductions) |
|---|---|---|
| $ | | for liquidated damages pursuant to Labor Code Section 1194.2 |
| $ | | Reimbursable business expenses |
| $ | 7,977.60 | for interest pursuant to Labor Code Section(s) 98.1(c), 1194.2 and/or 2802(b), |
| $ | 9,000.00 | for additional wages accrued pursuant to Labor Code Section 203 as a penalty *and that same shall not be subject to payroll or other deductions.* |
| $ | | for penalties pursuant to Labor Code Section 203.1 *which shall not be subject to payroll or other deductions.* |
| $ | | other (specify): |
| $ | 71,917.60 | TOTAL AMOUNT OF AWARD |

3. The herein Order, Decision or Award is based upon the Findings of Fact, Legal Analysis and Conclusions attached hereto and incorporated herein by reference.

4. The parties herein are notified and advised that this Order, Decision or Award of the Labor Commissioner shall become final and enforceable as a judgment in a court of law unless either or both parties exercise their right to appeal to the appropriate court* within ten (10) days of service of this document. Service of this document can be accomplished either by first class mail or by personal delivery and is effective upon mailing or at the time of personal delivery. If service on the parties is made by mail, the ten (10) day appeal period shall be extended by five (5) days. For parties served outside of California, the period of extension is longer (See Code of Civil Procedure Section 1013). In case of appeal, the necessary filing fee must be paid by the appellant and appellant must, immediately upon filing an appeal with the appropriate court, serve a copy of the appeal request upon the Labor Commissioner. If an appeal is filed by a corporation, a non-lawyer agent of the corporation may file the Notice of Appeal with the appropriate court, but the corporation must be represented in any subsequent trial by an attorney, licensed to practice in the State of California. Labor Code Section 98.2(c) provides that if the party seeking review by filing an appeal to the court is unsuccessful in such appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other party to the appeal and assess such amount as a cost upon the party filing the appeal.  An employee is successful if the court awards an amount greater than zero.

 PLEASE TAKE NOTICE: Labor Code Section 98.2(b) requires that as a condition to filing an appeal of an Order, Decision or Award of the Labor Commissioner, the employer shall first post a bond or undertaking with the court in the amount of the ODA; and the employer shall provide written notice to the other parties and the Labor Commissioner of the posting of the undertaking. Labor Code Section 98.2(b) also requires the undertaking contain other specific conditions for distribution under the bond. While this claim is before the Labor Commissioner, you are required to notify the Labor Commissioner *in writing* of any changes in your business or personal address within 10 days after any change occurs.

*L. A. Superior Court<br>Long Beach South District<br>415 West Ocean Blvd.<br>Long Beach, CA 90802

LABOR COMMISSIONER, STATE OF CALIFORNIA

BY: _____

 DATED: February 28, 2013

 Alonso Silva          HEARING OFFICER

EXHIBIT A, PAGE 19

LABOR COMMISSIONER, STATE OF CALIFORNIA
Department of Industrial Relations
Division of Labor Standards Enforcement
300 Oceangate, Suite 302
Long Beach, CA 90802
Tel: (562) 590-5048   Fax: (562) 499-6467

For Court Use Only:

DEMANDANTE:   Cristobal Cardona Barrera

Court Number

DEMANDADO:   TOTAL TRANSPORTATION SERVICES, INC.

Número del Caso Estatal   05-55410 LT

**ORDEN, DECISION O FALLO DEL COMISIONADO LABORAL**

1. El asunto antedicho fue atendido en una audiencia ante el Comisionado Laboral del Estado de California en el siguiente lugar y fecha:

Fecha: December 3, 2012   ☒ APLAZADO PARA EL:

Ciudad: 300 Oceangate, Suite 302, Long Beach, CA

2. SE ORDENA QUE:   Demandante recibe de el Demandado:

$   54,940.00   por sueldos (con deducciones legales)
$ _____   por danos liquidadas conforme con la Sección del Codigo Laboral 1194.2
$ _____   gastos del negocio reembolsables
$   7,977.60   por en interés conforme al Código Laboral, Sección(s) 98.1(c), 1194.2 y/o 2802(b)
$   9,000.00   por sueldos adicionales acumulados conforme al Código Laboral, Sección 203, como multas
$ _____   que no quedan sujetas a deducciones de nómina o de otro tipo
$ _____   por sueldos adicionales acumulados conforme del Código de Labor Sección 203.1.
$ _____   otra (especifique):
$   71,917.60   CANTIDAD TOTAL DEL FALLO

3. La presente Orden, Decisión o Fallo se basa en las Conclusiones de los Hechos y Análisis Legal adjuntos a la presente e incorporados por referencia.

4. Por medio de la presente se les avisa y se les hace saber a las partes que esta Orden, Decisión o Fallo del Comisionado Laboral será final y ejecutable como un fallo del tribunal al menos que una o ambas partes ejerciten su derecho de apelar ante el tribunal correspondiente dentro de diez (10) dias de habérseles entregado este documento. La entrega de este documento puede efectuarse ya sea por medio de correo de primera clase o por entrega personal y su fecha efectiva es la del día de envío o la de entrega en persona. Si la entrega a las partes se hace por correo, el periodo de diez (10) días para la apelación se extenderá por cinco (5) días. Para las partes a quienes se les hizo la entrega del aviso fuera de California, el periodo de extensión será más largo (Ver el Código de Procedimientos Civiles, Sección 1013) En caso de una apelación, los gastos de registro serán pagados por el apelante, quien deberá enviarle al Comisionado Laboral una copia de la petición de apelación inmediatamente después de haberla presentado ante los tribunales correspondientes. Si es una empresa la que presenta el Aviso de Apelación, puede hacerlo por medio de un agente que no sea abogado ante los tribunales correspondientes, pero dicha empresa debe ser representada en cualquier juicio subsecuente por un abogado con licencia para practicar leyes en el Estado de California. El Código Laboral, Sección 98.2(c) provee que si las partes que buscan una revisión presentando una apelación ante el tribunal no tienen éxito en dicha apelación, el tribunal deberá determinar los costos y honorarios razonables que contrajo la parte contraria de la apelación e imputará dicha cantidad como costo a la parte que presenta la apelación. Un empleado es exitoso, el tribunal hace el premio si cantidad es más grande que zero. FAVOR DE TOMAR EN CUENTA que el Código Laboral, Sección 98.2(b) requiere que, como condición para presentar una apelación a una Orden, Decisión o Fallo del Comisionado Laboral, el empleador deberá establecer primero una fianza o garantía con el tribunal por la cantidad indicada en la Orden, Decisión o Fallo; y el empleador deberá proveer un aviso por escrito a las demás partes y al Comisionado Laboral de haber hecho tal garantía. El Código Laboral, Sección 98.2(b) también requiere que la garantía contenga ciertas condiciones específicas más para ser distribuidas bajo la fianza. Mientras este reclamo esta antes la Comision Laboral, es requerido bajo la Sección de Codigo Laboral 98(a) notificar a la Comision Laboral por escrito cualquier cambio en su negocio o direccion personal dentro de 10 días despues de que cualquier cambio ocurra.

L. A. Superior Court
415 West Ocean Blvd.
Long Beach, CA 90802

COMISIONADO LABORAL, ESTADO DE CALIFORNIA

Por: _____
Alonso Silva   Funcionario de Audiencias

FECHADO: February 28, 2013
DLSE 535 (Rev. 1/12)   ORDEN, DECISION O FALLO DEL COMISIONADO LABORAL   L.C. 98

BEFORE THE LABOR COMMISSIONER

OF THE STATE OF CALIFORNIA

CRISTOBAL BARRERA )

                        Plaintiff )

vs. )

TOTAL TRANSPORTATION SERVICES, INC. )

                     Defendant, )

Case No. 05-55410-LT

ORDER, DECISION, OR
AWARD OF THE LABOR
COMMISSIONER

## BACKGROUND

    The Plaintiff filed an initial claim with the Labor Commissioner's office on March 26, 2012. The complaint raises the following allegations;

        1. Unlawful deductions made for the period of April 25, 2009 to August 27, 2011, in the amount of $54,940.00 per exhibit, and

        2. Interest pursuant to California Labor Code § 98.1, and

        3. Additional wages accrued pursuant to California Labor Code § 203 as a penalty at the rate of $300.00 per day for an indeterminate number of days not to exceed thirty (30) days, and

    A hearing was conducted in Long Beach, California on September 27, 2012 and was completed on December 3, 2012, before the undersigned-hearing officer designated by the Labor Commissioner to hear this matter. The Plaintiff appeared in person and was not represented by Counsel. Safety and Compliance Manager Richard Martinez appeared on behalf of the Defendant and was represented Attorney Robert Roginson. Co-Plaintiff Jose Montero appeared as witnesses on behalf of the Plaintiff. Interpreters Randy Castillo (9/27/12) and Albert Sousa (12/3/12) appeared on behalf of the Division.

EXHIBIT A, PAGE 21

Due consideration having been given to the testimony, documentary evidence, and arguments presented, the Labor Commissioner hereby adopts the following Order, Decision or Award.

### FINDINGS OF FACT

Plaintiff testified that the Defendant employed him as a Truck Driver for the period of April 25, 2009 to August 27, 2011. Plaintiff was employed in the County of Los Angeles, California under the terms of a written agreement. Plaintiff testified he was paid wages based on the load he delivered. He resigned on September 14, 2011.

Plaintiff is claiming unlawful deductions made for the period of April 25, 2009 to August 27, 2011, in the amount of $54,940.00 per Exhibit 1. He stated that he completed Exhibit 1 based on his paystubs. Plaintiff testified that he was an owner/operator when the "Clean Truck" program was initiated. He maintained that he signed an independent contractor agreement with Defendant (Exhibit 2) in order to drive a compliant truck to keep working. Plaintiff said that he could not take the truck off Defendant's property and could not park elsewhere. He conceded that he was told that the deductions would be made over a five (5) year lease to own arrangement but argued that he was an employee because he name was never on the truck registration or insurance over the two (2) plus years that he paid. He alleged that he never asked to use the truck to work for another employer because the truck was not in his name and he could not obtain insurance without it.

Martinez stated that Defendant has lease agreements with approximately 150 drivers using their own vehicle. He said that the drivers chose to lease a "Clean Truck" from Defendants because they could not afford their own. He testified that they signed a five (5) year lease but none of the leases had matured. He asserted that the drivers knew they were independent contractors paid with a 1099 and could drive for other companies but never asked, turn down loads, choose their own routes, wear their own clothing, make their own schedule within Department of Transportation and Port rules,

EXHIBIT A, PAGE 22

1  park the vehicle at the place of their choosing as they kept the keys, chose their own

2  mechanic and purchase their own insurance.

3      Plaintiff requests additional wages accrued pursuant to California Labor Code

4  § 203. Since his separation with the Defendant he is owed wages.

5

6                              LEGAL ANALYSIS

7  A party raising a defense to a claim bears the burden of proof as to each fact that is

8  essential to the defense that he or she is asserting. The Defendant raised the defense

9  that the Plaintiff was an independent contractor/operator from the period of February 1,

10 2009 to June 29, 2011 and should not be considered an employee for wage and hour

11 purposes.

12      There is a rebuttable presumption affecting the burden of proof that a worker

13 performing services for which a license is required, or who is performing such services

14 for a person who is required to obtain such a license is an employee rather than an

15 independent contractor (*S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations 1989*).

16      In this matter the Defendant contends the Plaintiff is an independent contractor

17 not subject to the jurisdiction of the Labor Commissioner's Office for wage and hour

18 purposes. In determining whether an individual providing service to another is an

19 employee or an independent contractor there is no single determinative factor. Under

20 the common law, the principle test was whether the person for whom the service was

21 rendered had the right to control the manner and means of accomplishing the result

22 desired.

23      In *Borello & Sons v. Department of Industrial Relations* (1989) 48 Cal.3d 341, the

24 California Supreme Court rejected the traditional common law focus on control of work

25 details as the only determinative factor in analyzing an employee-employer relationship

26 for the purposes of labor law protective legislation. Instead, the *Borello* court decision

27 adopted a multi-factor test.

1      The Supreme Court noted that the various individual elements that must be

2  considered are intertwined and their weight depends on particular combinations. The

3  amount of control over work details is only one factor to be considered. In determining

4  whether one acting for another is an employee or independent contractor the following

5  multi-factor elements are applied as follows in this case:

6      A.  Whether the person performing the service is engaged in a business or

7  occupation distinct from that of the principal. *The work that the Plaintiff performed is an*

8  *integral part, if not the essential core of the principal's business. Without the workforce of*

9  *drivers the Defendant would not have a business. In this case, the Defendant's business is*

10  *transporting services or goods. Defendant would be unable to provide this service or good if he*

11  *did not have drivers to deliver the service or good.*

12      B.  Whether or not the work is part of the regular business of the principal. *In*

13  *this case, transportation is the Defendant's business.*

14      C.  Whether the principal or the worker supplies the instrumentalities, tools

15  and the place for the person doing the work. The driver has no means or the ability on

16  his own to purchase a vehicle without the assistance of the Defendant. *In this case, the*

17  *Defendant provides all the necessary supplies, equipment and tools to perform the work that is*

18  *required to operate a transportation business and then charges the Plaintiff.*

19      D.  The alleged employee's investment in the equipment or materials required

20  by his or her task. *In this case, the employee signs a lease to operate a truck. He had no*

21  *upfront financial investment other than signing a lease.*

22      E.  Whether the service requires special training and skills. *No skills required*

23  *other then the ability to drive.* The kind of occupation, with reference to whether the work

24  is usually done under the direction of the principal or by a specialist without

25  supervision. *In this case, the nature of Plaintiff's work made detailed control not necessary.*

26      F.  The alleged employee's opportunity for profit or loss depending on his

27  managerial skill. *In this case, there is no opportunity to alter the costs to Defendants clients.*

Defendant has direct interaction with the customers and sets the contracts with its clients. Plaintiff could have never insured the vehicle so as to work for other clients as the vehicle and registration did not list him.

      G. The length of time for which the services are to be performed. *In this case the work was ongoing; the Driver takes ongoing assignments from the Defendant.*

      H. The degree of permanence of the working relationship. *In this case, the Plaintiff was employed only be the Defendant for almost a year and a half.*

      I. The method of payment, whether by time or by the job. *Plaintiff was paid by the job.*

      J. The extent of control which by the agreement, is exercised over the details of the work. *The Defendant exercises the agreements with its clients. The driver adheres to the agreements made by the Defendant and its client.*

      K. Whether or not the parties believe they are creating an employer-employee relationship. *The testimony and evidence presented established that the parties entered a written agreement that provided plaintiff would be an independent contractor.*

      In *Borello*, employment is defined broadly and there is a "general presumption that any person "in service to another" is a covered "employee." In this case, the Defendant has not met the burden of proof to establish that Plaintiff was an independent contractor.

      Defendant cites the contract as evidence of an independent contractor agreement. However, such a written agreement is only one factor among many to be considered. The fact that a person who provides services is paid as an independent contractor, that is, without payroll deductions and with income reported by an IRS form 1099 rather than a W-2, is of no significance whatsoever in determining employment status. The employer cannot change the status from that of an employee to one of an independent contractor by illegally requiring the employee to assume a burden that the law imposes directly on the employer, that being, withholding payroll taxes and reporting such

1  withholdings to the taxing authorities. Here, the existence of an independent contractor

2  agreement and the employer's payroll practices do not establish the independent

3  contractor relationship because of the substantial evidence supporting an employee

4  relationship when the other factors are considered.

5      Based on the testimony and documentation submitted by the parties, the

6  evidence supports that few of the factors in this case were indicative of the Plaintiff

7  being an independent contractor, however, the overriding factor in determining

8  whether the Plaintiff was an employee rather than an independent contractor relied on

9  the factor that the Plaintiff who performed the work was not engaged in an occupation

10 or business distinct from that of the Defendant. Rather, his work was the basis for the

11 Defendant's business.  The Defendant obtains the clients who are in need of

12 transportation services and provides the workers who conduct the service on behalf of

13 the Defendant.  Although there may be an absence of control over some details of the

14 work, an employee-employer relationship will be found if the <u>Defendant retains</u>

15 <u>pervasive control over the operation as a whole, the worker's duties are an integral</u>

16 <u>part of the operation, and the nature of the work makes detailed control unnecessary.</u>

17 *Yellow Cab Cooperative v. Workers Compensation Appeals Board (1991) 226 Cal.App.3d 1288.*

18 In this case, the Plaintiff's job duties as a truck driver were integral to the Defendant's

19 business and like in *Yellow Cab*, the Defendant exerted control all control required.

20      California Labor Code § 450 (a) provides: "No employer, or agent or officer

21 thereof, or other person, may compel or coerce any employee, or applicant for

22 employment, to patronize his or her employer, or any other person, in the purchase of

23 anything of value. Labor Code Section 2802 provides, "(a) An employer shall indemnify

24 his or her employee for all necessary expenditures or losses incurred by the employee in

25 direct consequence of the discharge of his or her duties, or of his or her obedience to the

26 directions of the employer, even though unlawful, unless the employee, at the time of

27 obeying the directions, believed them to be unlawful."

1     Employers may not lawfully avoid the legal obligations by labeling their workers

2  as independent contractors while treating them as employees, as Defendant did.

3  Defendant provides transportation services using a workforce of drivers whom they

4  call "independent contractor/operators."  Defendants utilize this "independent

5  contractor" label to unlawfully reap financial rewards for themselves at the expense of

6  their workforce and to secure an unfair competitive advantage over their competitors

7  by lowering their labor costs and shifting the risks and operating expenses while

8  retaining the right to control their workforce that an employer exercises over

9  employees.  Plaintiff was the Defendant's employee and is entitled to protections under

10  California law. However, Plaintiff offered no evidence of the amended amounts he

11  seeks. *The Plaintiff is entitled to the reimbursement of his wages in the amount of*

12  *$54,940.00.*

13     California Labor Code § 98.1.(c) states: "All awards granted pursuant to a hearing

14  under this chapter shall accrue interest on all due and unpaid wages at the adjusted

15  annual rate established pursuant to Section 19269 of the Revenue and Taxation Code..."

16  Interest is due from September 17, 2011, for the non-payment of wages in the amount of

17  $7,977.60.

18     California Labor Code § 202 of the California Labor Code establishes that "if an

19  employee, not having a written contract for a definite period, quits his employment, his

20  wages shall become due and payable not later than 72 hours thereafter, unless the

21  employee has given 72 hours prior notice of the intention to quit, in which case the

22  employee is entitled to the wages at the time of quitting." Plaintiff resigned on

23  September 14, 2011, so wages were due on September 17, 2011.

24     California Labor Code § 203 establishes that "if an employer willfully fails to pay,

25  without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5,

26  any wages of an employee who is discharged or who quits, the wages of the employee

27  shall continue as a penalty from the due date thereof at the same rate until paid or until

1    an action therefor is commenced; but the wages shall not continue for more than 30

2    days."

3         Provisions of the Labor Code relating to the payment of wages express a long-

4    held, strong public policy for the timely and prompt payment to workers.  The purpose

5    of Section 203 is to compel the prompt payment of earned wages. Pressler v. Donald L.

6    Bren Cal (1982) 32 Cal.3d 831, 837. (1940) 37 Cal.App.2D 269 made it clear that the term

7    "willful" does not require evil intent on the part of the employer, but merely that the

8    employer intentionally did not pay for whatever reason when the pay was due.

9         Court refers to Labor Code Section 203 in the decision of Hale v. Morgan (1978)

10   22 Cal.3d 388, 149 Cal.Rptr.375 that ignorance is no defense and willful requirement

11   means illegal act or omission and intentional without regard to motive.

12        Defendant has willfully failed to pay Plaintiff the balance of his earned wages in

13   accordance with California Labor § 201. Therefore, pursuant to California Labor Code

14   § 203 penalties are awarded Plaintiff for maximum of thirty (30) days at $300.00 per day

15   or $9,000.00. The daily rate is calculated based on Plaintiff's average daily earnings.

16

17                                  <u>CONCLUSION</u>

18        For all of the reasons set forth above, IT IS HEREBY ORDERED that the

19   Defendant pay to the Plaintiff:

20             1.  Plaintiff is awarded wages in the gross amount of $54,940.00, and

21             2.  Plaintiff is awarded interest pursuant to California Labor Code § 98.1 in

22   the amount of $7,977.60, and

23             3.  Plaintiff is awarded Penalties pursuant to California Labor Code § 203 in

24   the amount of $9,000.00, and

25             Total amount of award due to Plaintiff is $71,917.60.

26

27

EXHIBIT A, PAGE 28

1

2    Date: February 28, 2013          By: _____

3                                          ALONSO SILVA

4                                          HEARING OFFICER

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Page 9

STATE OF CALIFORNIA
DEPARTMENT OF INDUSTRIAL RELATIONS
DIVISION OF LABOR STANDARDS ENFORCEMENT

CERTIFICATION OF SERVICE BY MAIL
(C.C.P. 1013A) OR CERTIFIED MAIL

I, _____Soledad Cazares_____, do hereby certify that I am a resident of or employed in the County of _____Los Angeles_____, over 18 years of age, not a party to the within action, and that I am employed at and my business address is:

LABOR COMMISSIONER, STATE OF CALIFORNIA
300 Oceangate, Suite 302
Long Beach, CA 90802
Tel: (562) 590-5048   Fax: (562) 499-6467

I am readily familiar with the business practice of my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

On _____March 7, 2013_____ at my place of business, a copy of the following document(s):
_____Order, Decision or Award_____

was(were) placed for deposit in the United States Postal Service in a sealed envelope, by first class mail_____, with postage fully prepaid, addressed to:

NOTICE TO:  Bingham McCutchen LLP
Att: Jessica S. Boar
355 South Grand Ave Suite 4400
Los Angeles CA 90071

and that envelope was placed for collection and mailing on that date following ordinary business practices.

*I certify under penalty of perjury that the foregoing is true and correct.*

Executed on: _____March 7, 2013_____ at _____Long Beach_____, California

STATE CASE NUMBER:  05-55410 LT

_____Soledad Cazares_____
Soledad Cazares

---

DLSE 544/DEF. ATTY. (3/06)        CERTIFICATION OF MAILING                    L.C. 98